**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAIR STUDIO 1208, LLC, individually and on behalf of all others similarly situated,** | : | |
| | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 20-2171** |
| **HARTFORD UNDERWRITERS INSURANCE CO.,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                    **May 14, 2021**

## MEMORANDUM OPINION

Governmentally-imposed shutdown orders and limitations on customer capacity to alleviate the spread of the COVID-19 virus have surely taken a toll on businesses across the United States.  Many of these businesses have turned to their insurance companies for help, seeking coverage for their losses.  In most cases, they have unfortunately been met with denials.

Plaintiff Hair Studio 1208, LLC is an indoor hair salon and personal care business that sought and was denied such insurance coverage from its insurer, Defendant Hartford Underwriters Insurance Company.  Plaintiff sues for breach of contract and for a declaratory judgment on its own behalf and on behalf of other similarly-situated businesses.  Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  While I sympathize with the plight of this business owner, I will nonetheless grant the Motion and dismiss the Complaint.

I.     **FACTS IN THE AMENDED COMPLAINT**

The following facts are set forth in the Amended Complaint:[1]

A.     **The Insurance Policies**

Plaintiff operates an indoor hair salon whose services include hair styling, washing, and coloring.  Plaintiff's business property includes property owned and/or leased by Plaintiff and used for general business purposes for the specific purpose of hair styling and other personal care business-related activities.  (Am. Compl. ¶¶ 9, 12.)

In the course of its business, Plaintiff obtained a Business Owner's Policy and related endorsements (the "Policy") from Defendant, insuring Plaintiff's property and business practice, with effective dates of January 1, 2020 to January 2, 2021.  The Policy is an "all-risk" policy that provides broad property and business interruption coverage except where excluded.  The Policy also includes Business Income Coverage, Extra Expense Coverage, Extended Business Income Coverage, and Civil Authority Coverage.   The Amended Complaint avers that the business interruption coverage is materially identical to an insurance industry standardized form that is used in all fifty states.  (Id. ¶¶ 11, 13–16.)

Pursuant to the "Special Property Coverage Form," the Policy covers "direct physical loss of or direct physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss."  "Covered Cause of Loss" means "direct physical loss or direct physical damage unless the loss or damage is excluded or limited in this Coverage Part." (Id., Ex. A, p. 18–19.)  The Policy also includes an endorsement for "Business Income and Extra Expense" (the "Business Income

---

[1]      In deciding this motion, I must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

endorsement") and a Coverage Extension for "Civil Authority Actions" (the "Civil Authority

endorsement").

The Business Income endorsement specifically provides, in pertinent part:

> We will pay for the actual loss of Business Income you sustain due
> to the necessary suspension of your "operations" during the "period
> of restoration".   The suspension must be caused by direct physical
> loss  or  direct  physical  damage  to  property  at  the  "scheduled
> premises", including personal property in the open (or in a vehicle)
> within 1,000 feet of the "scheduled premises", caused by or resulting
> from a Covered Cause of Loss.

(Id., Ex. A., p. 61.)

The Civil Authority endorsement states, in pertinent part:

> When a Covered Cause of Loss causes direct physical loss or direct
> physical damage to property other than at the "scheduled premises",
> we will pay for the actual loss of Business Income you sustain and
> necessary Extra Expense you incur during the "civil authority period
> of restoration" caused by action of civil authority that prohibits
> access  to  the  "scheduled  premises"  provided  that  both  of  the
> following apply:
>
> (a)   Access  to  the  area  immediately  surrounding  the  damaged
> property is prohibited by civil authority as a result of the damage,
> and the "scheduled premises" are within that area but are not more
> than one mile from the damaged property; and
>
> (b)   The action of civil authority is taken in response to dangerous
> physical conditions resulting from the damage or continuation of the
> Covered Cause of Loss that caused the damage, or the action is taken
> to enable a civil authority to have unimpeded access to the damaged
> property.

(Id. , Ex. A, p. 72.)

The Policy also excludes losses from "virus, bacterium or other microorganism that

induces or is capable of inducing physical distress, illness or disease."  Specifically, this "Virus

Exclusion" states:

> We will not pay for loss or damage caused directly or indirectly by
> any of the following. Such loss or damage is excluded regardless of
> any other cause or event that contributes concurrently or in any
> sequence to the loss. These exclusions apply whether or not the loss
> event results in widespread damage or affects a substantial area:
> . . .
> Any virus, bacterium or other microorganism that induces or is
> capable of inducing physical distress, illness or disease.

(Id., Ex. A, pp. 21, 23.)

### B.   The Losses

In January 2020, the United States of America saw its first cases of persons infected by

COVID-19, the spread of which has since been designated a worldwide pandemic. Given the

stable and transmittable nature of the virus, the Centers for Disease Control ("CDC")

recommended avoiding indoor activities. As such, on March 6, 2020, Pennsylvania Governor Tom

Wolf, acting pursuant to 35 Pa.C.S. § 7301(c), proclaimed the existence of a disaster emergency

throughout the Commonwealth. (Am. Compl. ¶¶ 18–20.)

On March 19, 2020, Governor Wolf ordered the closure of all non-life-sustaining

businesses, stating in pertinent part:

> No person or entity shall operate a place of business in the
> Commonwealth that is not a life sustaining business regardless of
> whether the business is open to members of the public. This
> prohibition does not apply to virtual or telework operations (e.g.,
> work from home), so long as social distancing and other mitigation
> measures are followed in such operations.

(Id. ¶ 23.)

On March 23, 2020, Governor Wolf issued a "Stay at Home" order that provided:

> All individuals residing in Allegheny County, Bucks County,
> Chester County Delaware County, Monroe County, Montgomery
> County, and Philadelphia County are ordered to stay at home except
> as needed to access, support, or provide life sustaining business,
> emergency, or government services. For employees of life
> sustaining businesses that remain open, the following child care

> services may remain open:  group and family child care providers in
> a residence; child care facilities operating under a waiver granted by
> the Department of Human Services Office of Child Development
> and Early Learning; and part-day school age programs operating
> under an exemption from the March 19, 2020 business closure
> Orders.

(Id. ¶ 26.)  By way of order on April 20, 2020, this proclamation and order were extended through May 8, 2020.  (Id. ¶ 28.)

On March 16, 2020, Plaintiff closed its business and stopped providing hair and personal care services as a result of the above proclamations and orders.  Because Plaintiff was unable to use its property for its intended purpose, it sought coverage under its Policy with Defendant claiming business interruption, extra expense, interruption by civil authority, and other expenses. In a letter dated April 3, 2020, Defendant denied coverage for Plaintiff's losses, citing in part to the "Virus Exclusion."  (Id. ¶¶ 30–31, 33, 36.)

Plaintiff filed a Complaint on May 5, 2020, and an Amended Complaint on July 27, 2020, alleging breach of contract and seeking a declaratory judgment against Defendant.  Plaintiff also brings its claims on behalf of other similarly-situated persons and entities.

## II.   STANDARD OF REVIEW

A motion for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), should be granted if the movant establishes that there are no material issues of fact, and he/she is entitled to judgment as a matter of law.  Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017) (quotations omitted).  In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings.  Mele v. Federal Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004).  A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.  Id. (quotations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 556 U.S. at 679).

## III.     DISCUSSION

The questions at issue here involve the interpretation of the insurance contract between Plaintiff and Defendant.  Under Pennsylvania law, the interpretation of an insurance contract is a question of law.  401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005). The task of interpreting an insurance contract is generally performed by the court rather than a jury, and "[t]he purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Id. at 171. "[A]ll provisions of an insurance contract must be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012) (quoting Masters v. Celina Mut. Ins. Co., 224 A.2d 774, 776 (Pa. Super. 1966)).  Where no genuine issues of material fact exist and "[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language." 401 Fourth Street, 879 A.2d at 171.

A policy is ambiguous where it is reasonably susceptible of more than one construction and meaning.  Pa. Nat'l Mut. Cas. Ins. Co. v. St. John, 106 A.3d 1, 14 (Pa. 2014) (citation omitted). It is not ambiguous, however, merely because the parties disagree about its meaning, and policy language should not be stretched beyond its plain meaning to create an ambiguity.  Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 164 (3d Cir. 2011).  "Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist." Sikrica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

The insured bears the initial burden of establishing coverage under the policy.  State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citations omitted).  If the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying

coverage, the insurer then has the burden of proving that the cited exclusion applies.  Id.; Wolfe v. Ross, 115 A.3d 880, 884 (Pa. Super. Ct. 2015).  Exclusions are strictly construed against the insurer.  Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998).  However, "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import."  Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985).

Here, Defendant argues that Plaintiff has not plausibly alleged that it suffered covered losses under the Policy at issue, and, even if such losses are covered, they fall within the Virus Exclusion.  Plaintiff responds that: (1) its losses are, in fact, covered losses with the Policy's terms, and (2) the Virus Exclusion does not apply.

A.    **Whether There Is a Covered Loss**

As noted above, Plaintiff bears the burden of establishing that it suffered a covered loss under the Policy.  In an effort to plead a covered loss, Plaintiff contends that insurance coverage for its COVID-19 related losses exists under either or both of the Business Income endorsement or the Civil Authority endorsement in the policies.  Defendant challenges the existence of coverage under either endorsement.

1.    Business Income Endorsement

Plaintiff first posits the policies at issue are "all-risk" policies, meaning that "policyholders do not have the burden to affirmatively demonstrate coverage, but rather, need only show that a loss has occurred."  (Pl.'s Resp. 6.)  It argues that as long as a reasonable person could conclude that the claimed loss is covered by language anywhere in the policy or the endorsements, the insured has carried its burden.  Plaintiff presses that it sustained a direct physical loss of or damage

to its property because it suffered an interruption to its use of and access to its premises for the purpose of operating its hair salon and providing hair salon services.   Accordingly, Plaintiff contends that coverage exists under the Policy.

This argument improperly reverses the well-established burden of proof under Pennsylvania law.   As noted above, an insured bears the initial burden of establishing coverage under the policy.   Mehlman, 589 F.3d at 111.   Plaintiff is correct that an "all-risk" policy is a special kind of insurance policy that "covers every kind of insurable loss except what is specifically excluded."   Betz v. Erie Ins. Exch., 957 A.2d 1244, 1255–56 (Pa. Super. Ct. 2008) (quoting Black's Law Dictionary 815 (8th ed. 2004)); [2] see also 10 Couch on Ins. § 148:50 ("A property insurance policy which covers 'physical loss or damage to property insured from any external cause' is properly construed to be an 'all-risk' policy.").   However, "[t]he term 'all-risk' has been said to be 'somewhat misleading'" as "'[a]ll-risk' is not synonymous with 'all loss.'" Intermetal Mexicana, S.A. v. Ins. Co. of N. Am., 866 F.2d 71, 75 (3d Cir. 1989).   Rather, "the responsibility under a first-party 'all risks' policy must be determined by the terms and conditions of the contract."   Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 234 (3d Cir. 2002) (citing 10 Couch on Ins. § 148:48 (3d Cir. 1998) ("A loss which does not properly fall within

---

[2]      Plaintiffs cite to Betz v. Erie Ins. Exch., 957 A.2d 1244, 1257 (Pa. Super. Ct. 2008) for the proposition that as the insurer of an all-risk policy, Hartford has the burden to show that there is no coverage."   (Pls.' Resp. 16.)   In Betz, however, the insureds had purchased "extracover insurance policy" which covered all losses unless explicitly excluded from coverage.   Id. at 1250. The Pennsylvania Superior Court expressly recognized the Pennsylvania Supreme Court's mandate that "[i]n an action based upon an 'all risks' insurance policy, the burden is upon the insured to show *that a loss has occurred*; thereafter the burden is on the insurer to defend by showing that the loss falls within a specific policy exclusion."   Id. (quoting Wexler Knitting Mills v. Atl. Mut. Ins. Co., 555 A.2d 903, 905 (Pa. Super. 1989)(emphasis in original).

Here, by contrast, the policies do not cover "all losses," but rather only "direct physical loss or direct physical damage to Covered Property at the premises" and any extension of those losses set forth in the Business Income and Civil Authority endorsements.   Accordingly, the burden remains on Plaintiffs to show a "Covered Cause of Loss."

the coverage clause cannot be regarded as covered thereby merely because it is not within any of the specific exceptions . . . . ")).

Here, the coverage provisions of the Policy expressly provide that Defendant "will pay for direct physical loss of or direct physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss." (Am. Compl., Ex. A., p. 19.)  A "Covered Cause of Loss" means *direct physical loss or direct physical damage* unless the loss or damage is excluded or limited in this Coverage Part." (Id. at p. 19.)  The Business Income endorsement extends the available coverage by providing, in pertinent part:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration".  *The suspension must be caused by direct physical loss or direct physical damage to property* at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", *caused by or resulting from a Covered Cause of Loss.*

(Id. at p. 61.)

Thus, a plain reading of the unambiguous language of the Policy—and one that gives effect to all of the provisions therein—reveals that in order for a loss to be covered, there must be a "covered cause of loss," which results in "direct physical loss or direct physical damage to property."  This phrase is crafted in the disjunctive, meaning there must either be "direct physical loss" *or* "direct physical damage to the property." Frank Van's Auto Tag, LLC v. Selective Ins. Co., No. 20-cv-2740, 2021 WL 289547, at *4 (E.D. Pa. Jan. 28, 2021).

Direct physical damage is "a distinct, demonstrable, physical alteration of the property." Newchops Restaurant Comcast LLC v. Admiral Indem. Co., Nos. 20-cv-1949, 20-cv-1869, 2020 WL 7395153, at *5 (E.D. Pa. 2020) (quoting 10A Couch on Ins. § 148.46 (3d ed. 1995) (citation omitted)).  "Pure economic losses are intangible and do not constitute property damage." Id.

(quoting 9A <u>Couch on Ins.</u> § 129.7).  "Direct physical loss," on the other hand, exists when a structure has been rendered "uninhabitable and unusable," causing the owner to suffer a "distinct loss."  <u>Port Auth. of NY and NJ v. affiliated FM Ins. Co.</u>, 311 F.3d 226, 235 (3d Cir. 2002).  When the "structure continues to function" there is no physical loss that would be eligible for coverage. <u>Id.</u>  Stated differently, "[t]he words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."  <u>Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.</u>, No. 20-cv-3463, 2021 WL 633356, at *2 (N.D. Ill. Feb. 18, 2021).

The United States Court of Appeals for the Third Circuit has expanded on both of these definitions in several key cases.  In <u>Port Authority of New York and New Jersey v. Affiliated FM Insurance Co.</u>, <u>supra</u>, the Third Circuit considered an insurance claim for alleged losses due to the presence of asbestos.  Interpreting an identical insurance provision under New Jersey and New York law, the Court remarked that allegations of physical damage to a building from "sources unnoticeable to the naked eye must meet a higher threshold."  <u>Id.</u> at 235.  The Court concluded that the "mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage."[3] <u>Id.</u> at 236.

---

[3]     Plaintiff argues that the Third Circuit held that coverage for "physical loss or damage" would apply if "an actual release of asbestos fibers" contaminated a building "such that its function is nearly eliminated or destroyed, <u>or</u> the structure is made useless or uninhabitable, <u>or</u> if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility."  (Pl.'s Resp. 8–9 (quoting <u>Port Authority</u> (emphasis added)).).  Based on that language, Plaintiff reasons that the Third Circuit would agree that any loss of use or functionality triggers coverage.

       Plaintiff, however, disregards the Court's language immediately following this sentence that emphasizes that "[t]he mere presence of asbestos, or the general threat of future damage from

Subsequently, in the unpublished decision of <u>Motorists Mutual Ins. Co. v. Hardinger</u>, 131 F. App'x 823, 826 (3d Cir. 2005), the Third Circuit extended the principles dictated in <u>Port Authority</u> to the meaning of "direct physical loss" under Pennsylvania law.  <u>Id.</u> at 826.  The insureds in that case sought insurance coverage due to the presence of bacteria in the home's well that caused them to become sick.  <u>Id.</u> at 824.  The Third Circuit reiterated the standard set forth in <u>Port Authority</u> and noted that, where the damage involves "sources unnoticeable to the naked eye," "physical loss or damage" occurs where that source nearly eliminates or destroys the property, renders it "useless or uninhabitable," or causes "loss of utility."  <u>Id.</u> at 826 (citing <u>Port Authority</u>). The Court found that summary judgment was inappropriate in that case because there was a genuine issue of fact as to whether the functionality of the insureds' home was nearly eliminated or destroyed, or whether property was made useless or uninhabitable by the presence of bacteria in the home.  <u>Id.</u> at 826–27.

In a case factually analogous to the one before me, the United States District Court for the Southern District of New York applied Pennsylvania law to address whether pure economic loss warranted coverage under a policy that required "direct physical loss."  <u>Philadelphia Parking Auth. v. Fed. Ins. Co.</u>, 385 F. Supp. 2d 280 (S.D.N.Y. 2005).  There, the operator of a parking garage at Philadelphia International Airport sustained significant economic loss following the terrorist attacks on September 11, 2001 due to the ensuing decrease in airline travel.  <u>Id.</u> at 282.  The plaintiff sought insurance coverage for this decrease in business.  <u>Id.</u>  The court declined to find coverage, holding that "the phrase 'physical loss or damage' is not ambiguous since 'reasonably intelligent [people] on considering it in the context of the entire policy would [not] honestly differ

---

that presence" does not constitute "physical loss or damage."  Rather, the Third Circuit made clear that for coverage to be triggered, there must be actual presence of asbestos that makes the structure uninhabitable and unusable.  <u>Id.</u> at 236.

as to its meaning.'" Id. at 289 (quoting United Servs. Auto Ass'n v. Elitzky, 517 A.2d 982, 985 (Pa. Super. 1986)).  It concluded that "the phrase 'direct physical loss or damage,' when considered in the context of the Insurance Policy at issue in the present case, require[d] that claimed loss or damage must be physical in nature." Id.

Numerous decisions from within this Circuit are instructive on whether the threat of COVID-19 constitutes "direct physical loss or direct physical damage to property."  These decisions have almost uniformly concluded that such a threat does not trigger insurance coverage.[4] See, e.g., Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co., No. 20-cv-5271, 2021 WL 1210000, at *5–6 (E.D. Pa. Mar. 31, 2021); Eric R. Shantzer, DDS v. Travelers Cas. Ins. Co. of Am., No. 20-cv-2093, 2021 WL 1209845, at *4 (E.D. Pa. Mar. 31, 2021); Tria WS LLC v. Am. Auto. Ins. Co., No. 20-4159, 2021 WL 1193370, at *3–5 (E.D. Pa. Mar. 30, 2021); Chester Cty. Sports Arena v. The Cincinnati Specialty Underwriters Ins. Co., Nos. 20-cv-2021 et al., 2021 WL 1200444, at *7 (E.D. Pa. Mar. 30, 2021); Kahn v. Pa. Nat'l Mut. Cas. Ins. Co., No. 20-cv-781, 2021 WL 422607, at *6–7 (E.D. Pa. Feb. 8, 2021);  Frank Van's, 2021 WL 289547, at *6–7; 1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc., No. 20-cv-862, 2021 WL 147139, at *6–7 (W.D. Pa. Jan. 15, 2021); Rest. Grp v. Certain Underwriters at Lloyd's, London, No. 20-cv-2365, 2021 WL 131339, at *5–

---

[4]      In the recent case of Hegedus, Inc. v. ACE Fire Underwriters Ins. Co., No. 20-2832, 2021 WL 1837479 (E.D. Pa. Pa. May 7, 2021), one of my colleagues, applying California law, addressed similar policy language and found that the phrase "direct physical loss of or direct physical damage to property" was ambiguous in the context of Business Income and Extra Expense Insurance.  Id. at *9.  The decision held that the plaintiff, who claimed losses due to the mandatory suspension of the in-person operations of its retail furniture store, had alleged a covered cause of loss that plausibly fell within the scope of the policy.  In turn, the court found that the complaint was sufficient to survive a motion to dismiss.  Id.
         Respectfully, I disagree.  Interpreting the pertinent policy language before me—"direct physical loss or damage to property"— and in light of guidance from both the Third Circuit and other cases within this District as discussed above, I do not find the policy language ambiguous.

6 (E.D. Pa. Jan. 14, 2021); <u>Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.</u>, No. 20-

2401, 2021 WL 131556, at *6–7 (E.D. Pa. Jan. 14, 2021); <u>Newchops</u>, 2020 WL 7395153, at *5;

<u>Kessler Dental Assocs., P.C. v. Dentists' Ins. Co.</u>, No. 20-cv-3376, 2020 WL 7181057, at *4 (E.D.

Pa. Dec. 7, 2020); <u>4431, Inc. v. Cincinnati Ins. Cos.</u>, No. 20-cv-4396, 2020 WL 7075318, at *11–

12 (E.D. Pa. Dec. 3, 2020); <u>Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.</u>,

No. 20-cv-3342, 20202 WL 7024287, at *3–4 (E.D. Pa. Nov. 30, 2020); <u>Brian Handel D.M.D.,</u>

<u>P.C. v. Allstate Ins. Co.</u>, No. 20-3198, 2020 WL 6545893, at *3 (E.D. Pa. Nov. 6, 2020).[5]

Against this legal landscape, I find that "for Plaintiff[] to assert an economic loss resulting

from their inability to operate their premises as intended within the coverage of the Policy's

'physical loss' provision, the loss and the bar to operation from which it results must bear a causal

relationship to some *physical condition* of or on the premises and that the premises must be

uninhabitable and unusable, or nearly as such." <u>Humans & Resources, LLC v. Firstline Nat'l Ins.</u>

<u>Co.</u>, No. 20-cv-2152, 2021 WL 75775, at *7 (E.D. Pa. Jan. 8, 2021).  Plaintiff has not alleged

---

[5]     Plaintiff asserts that Defendant "fails to cite Pennsylvania business interruption rulings on similar facts that are favorable to policyholders."  (Pl.'s Resp. 1.)  Plaintiff then identifies two Pennsylvania state court cases that rejected a motion to dismiss claims for business interruption insurance due to COVID-19.  In <u>Ridley Park Fitness, LLC v. Philadelphia Indemnity Ins. Co.</u>, No. 01093 (Phila. Com. Pl. Aug. 31, 2020) and <u>Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London</u>, No. 00375 (Pa. Comm. Pl. Oct. 26, 2020), both authored by the same judge, the Philadelphia Court of Common Pleas, via footnote orders, declined to dismiss a complaint seeking insurance coverage for business losses at a fitness center as a result of the pandemic and the resulting closure orders. (Pl.'s Resp., Exs. 1 & 2.)  The court provided no statement of the relevant policy provisions but, rather, simply found that "it would be premature for this court to resolve the factual determinations put forth by defendants to dismiss plaintiff's claims."  (<u>Id.</u>)  Given the absence of any rationale for the court's decisions, I do not find the persuasiveness of these rulings to outweigh that of the rulings by my colleagues in federal court.
        By contrast, in <u>Scranton Club v. Tuscarora Wayne Mut. Grp., Inc.</u>, No. 2020-2469 at 36 (Pa. Com. Pl. Lackawanna Cnty. Jan. 25, 2021),  the Lackawanna Court of Common Pleas considered the same issue and dismissed the insured plaintiff's claims, finding that the insured had "not alleged any facts which may arguably satisfy the 'direct physical loss or damage' requirement for . . . coverage under the policy.  It also has not alleged the requisite repair, restoration, or replacement of its premises during its 'period of restoration.'"  <u>Id.</u>

either physical loss or physical damage within the meaning of the Policy.  Unlike in <u>Motorist's Mutual</u>, where there were specific allegations of bacteria in the insured property, Plaintiff does not assert the presence of COVID-19 on its property.  Indeed, the Amended Complaint does not allege any facts regarding the physical integrity or use of the Covered Property.  Rather, Plaintiff contends that it closed its business due to Governor Wolf's Closure Orders.  (Am. Compl. ¶ 29–32.)  Thus, contrary to the cases on which Plaintiff relies,[6] there was no physical source or threatened presence of a physical source that caused Plaintiff's inability to use its property for its intended purpose.

In pressing for coverage, Plaintiff alleges alternatively that the "covered cause of loss" is not the threat of COVID-19 itself but the Closure Orders that have caused physical loss including "access to its hair salon for its intended and insured purpose and function, as well as access to chairs, sinks, blow dryers and other equipment, which Plaintiff cannot use for hair styling, washing, and coloring."  (Am. Compl. ¶¶ 31, 32.)  In support of this argument, Plaintiff cites to <u>North State Deli, LLC v. Cincinnati Ins. Co.</u>, 20-v-2569, 2020 WL 6281507, at *3 (N.C. Super.

---

[6]  Plaintiff's failure to allege the physical presence of COVID-19 at its property or other tangible, physical damage distinguishes this case from the cases it cites in its brief.  <u>See</u> <u>Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.</u>, 968 A.2d 724, 737–38 (N.J. Super. 2009) (physical damage to electrical grid which caused interruption of electrical power to supermarkets' refrigeration system for several days); <u>Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.</u>, No. 12-cv-4418, 2014 WL 6675934, at *4 (D.N.J. Nov. 25, 2014) (release of ammonia from facility's refrigeration system); <u>General Mills, Inc. v. Gold Medal Ins. Co.</u>, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (contractor's treatment of oats with an approved pesticide, thus rendering cereal manufacturer unable to legally sell those oats, constated an impairment of function and value sufficient to support a finding of physical damage); <u>Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.</u>, No. 99-cv-185, 2000 WL 726789, at *3 (D. Ariz. Apr. 18, 2000) (power outage causing mainframe computers to lose programming information and rendered them inoperable for eight hours constituted "property damage"); <u>Murray v. State Farm Fire & Cas. Co.</u>, 509 S.E.2d 1, 16–17 (W.Va. 1998) (finding direct physical loss where insureds' damage to their homes from rocks falling from highwall of abandoned rock quarry, and holding that insurance policies covered the total loss of homes' use because homes were rendered unusable due to threat of future rocks and boulders from the damaged highwall).

Ct. Oct. 9, 2020). Relying on dictionary definitions of the words "direct," "physical," and "loss," the North Carolina Superior Court held that these terms "includes the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions." Id. at *3. Noting that "direct physical loss" included "loss of use or access to covered property even where that property has not been structurally altered," the North Carolina court, with little additional analysis, found that government orders prohibiting plaintiffs from using their business due to the threat of COVID-19 were, in fact, covered losses. Id. at *3–4.

I find North State Deli's interpretation contrary to the language of the Policy as construed under the dictates of Pennsylvania law.[7] As noted above, the Policy term at issue is "direct physical damage or direct physical loss." The Closure Orders, however, have no impact on the physical condition of the insured premises and do not physically make the premises either uninhabitable or unusable for their intended purpose. As such, to read the insurance policies as covering losses from the Closure Orders would render the Policy's use of the word "physical" meaningless or superfluous. See Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am., 693 F.3d 417, 428 (3d Cir. 2012) (holding that an insurance contract should not be interpreted so as to render certain words superfluous). Mere loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property.[8] See T & E

---

[7] Although there are a few other isolated decisions that agree with North State Deli, I note that its holding is contrary to the overwhelming weight of precedent finding that losses resulting from COVID-19 closure orders do not result in "direct physical loss" or "direct physical damage." See T & E Chicago LLC v. Cincinnati Ins. Co., No. 20-cv-4001, 2020 WL 6801845, at *4 (N.D. Ill. Nov. 19, 2020) (citing cases).

[8] Plaintiff's reliance on Elegant Massage, LLC v. State Farm Automobile Ins. Co., No. 20-cv-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020) is unconvincing. There, the court found that the required closure of plaintiff's business due to the threatened presence of COVID-19 constituted a direct physical loss because the property was uninhabitable and inaccessible. Id. at *9. In so

Chicago LLC v. Cincinnati Ins. Co., No. 20-cv-4001,2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020) (noting that policy's use of "loss to" versus "loss of" phrasing supports conclusion that loss of use of property without physical change to the property does not constitute direct physical loss or damage to the property).

This interpretation is amplified by the language in the business income endorsement that the covered loss of business income is that sustained "due to the necessary suspension of your 'operations' *during the 'period of restoration'*." The Policy defines "period of restoration" as beginning after the "direct physical loss or direct physical damage" and ending on the earlier of "[t]he date when the property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "the date when [the] business is resumed at a new, permanent location." (Am. Compl., Ex. A, p. 35.) In other words, the Policy provides coverage during a "period of restoration" requiring some correction of a physical condition at the property. "If there is no requirement that physical loss of or physical damage to the property be involved, the definition of the time for paying the claim makes no sense." Real Hospitality LLC v. Travelers Cas. Ins. Co. of Am., No. 20-cv-0087, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4, 2020).

In short, nothing in the Amended Complaint suggests that Plaintiff's Property needs to be repaired, rebuilt, replaced, or moved to a new location. Rather, Plaintiff's ability to operate fully depends solely on whether the Closure Orders are in effect at any particular time. Should the Closure Orders be lifted, Plaintiff may immediately reopen its business without any "period of

---

holding, however, the court cited to cases wherein intangible and invisible intrusions, such as noxious gasses or toxic air particles, rendered the property uninhabitable, inaccessible, and dangerous to use. Id. Respectfully, the court did not recognize the distinction between the cases it cited—in which there was an actual intrusion by an intangible or invisible source—and the situation before it, where there was no alleged actual intrusion of COVID-19 that rendered the property inhabitable or inaccessible.

restoration."  Accordingly, I do not find that the Closure Orders themselves resulted in either physical damage or physical loss.[9]

Absent some sort of direct physical loss or direct physical damage to Plaintiff's Property, Plaintiff has not met its burden of proof of showing a covered loss under the Policy.

2.    Coverage Under the Civil Authority Endorsement

Plaintiffs next contend that even if coverage did not exist under the Business Income endorsement of the policy, coverage was extended to this particular situation under the Civil Authority endorsement.  This endorsement states, in pertinent part:

> When a Covered Cause of Loss causes direct physical loss or direct physical damage to property other than at the "scheduled premises", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur during the "civil authority period of restoration" caused by action of civil authority that prohibits access to the "scheduled premises" provided that both of the following apply:
>
> (a)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the "scheduled premises" are within that area but are not more than one mile from the damaged property; and
>
> (b)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Am. Compl., Ex. A., p. 72.)

---

[9]     Plaintiffs also cite to a decision by the New Jersey trial court, in Optical Services USA v. Franklin Mutual Insurance Co., No. BER-L-3681-20, wherein the judge denied a motion to dismiss a claim for insurance coverage resulting from the shutdown orders.  Applying New Jersey law, the court—via an oral decision—declined to find, absent further discovery, whether the loss of use of a business due to a New Jersey state order deeming all non-essential businesses unsafe constituted a direct physical loss or direct physical damage under the insurance policy. (Pl.'s Resp., Ex. 3.)  I disagree with this ruling because interpretation of an insurance contract is purely legal and does not require discovery.

Plaintiff argues that each of Civil Authority endorsement's "prongs" is adequately pled: (1) property "within one mile" of the insured premises experienced "direct physical loss or direct physical damage," (2) which caused an "action of civil authority" to "prohibit[] access" to the insured premises, and (3) "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage. Plaintiff contends that "[t]he pandemic in the Commonwealth created a disaster emergency affecting both people and property and resulting in direct physical loss or damage to property within one mile of Plaintiff's premises, and the Governor's orders were issued in response to that physical loss or damage." (Pl.'s Resp. 20.) Plaintiff goes on to posit that pandemic-related property damage has spread throughout Pennsylvania, including locations within one mile of Plaintiff's property.

"[A] plain reading of the Civil Authority coverage provision unambiguously requires an allegation that *another* property, besides the insured premises, suffered some 'physical loss' or 'damage.'" Kahn, 2021 WL 422607, at *8. The Amended Complaint here, however, is devoid of any allegation that any property "within one mile" of the insured premises experienced any "direct physical loss or direct physical damage." The absence of any such allegation is fatal to Plaintiff's claim[10]. See Frank Van's, 2021 WL 289547, at *7 (holding that failure to allege that other properties sustained damage is fatal to coverage under a Civil Authority provision); see also Toppers, 2020 WL 7024287, at *4 ("Toppers [Salon and Health Spa] did not close because of

---

[10]     Plaintiff's reliance on Friends of Danny DeVito v. Wolf, 227 A.3d 872 (Pa. 2020) is misplaced. That case involved a direct challenge to Governor's Wolf's constitutional authority to issue the Closure Orders. It did not involve interpretation of insurance policies or whether the pandemic resulted in any direct physical damage or loss. It held only that COVID-19 is a natural disaster that triggers the Governor's executive authority because it "is unquestionably a catastrophe that 'results in . . . hardship, suffering or possible loss of life.'" Id. at 888 (ellipses in original) (quoting 35 Pa. Cons. Stat. § 7102).

damage to a nearby premise or because there was some dangerous physical condition at another nearby premise.  It closed because the Shutdown Orders applied to its own operations. Its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.").

Moreover, the relevant Closure Orders were not issued in response to "dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss."  Rather, the Closure Orders were issued to *prevent* the spread of the COVID-19 virus to any of these properties. That fact brings this claim outside the coverage of the Civil Authority endorsement.  See  Frank Van's, 2021 WL 289547, at *7 ("[T]he orders enforced the stated need for social distancing to prevent future viral transmission. . . . But the fear of the virus in nearby properties does not establish physical damage."); Newchops, 2020 WL 7395153, at *6 (noting that "[t]he shutdown orders and accompanying proclamations were in response to the COVID-19 health crisis, not damage to any property—the insureds' or another's.").

Finally, I note that Plaintiff has not alleged that the Closure Orders "prohibit[ed] access to the 'scheduled premises'" as required by the Civil Authority endorsement.  Brian Handel, D.M.D., 2020 WL 6545893, at *3 (finding no coverage under Civil Authority endorsement because "[p]laintiff's property remained inhabitable and usable, albeit in limited ways").  Rather, Plaintiff contends that it lost access to its hair salon for its intended purpose, including hair styling, washing, and coloring.  (Am. Compl. ¶ 32.)  Such an allegation is insufficient to meet the Civil Authority endorsement.  See Pappy's Barber Shops, Inc. v. Farmers Grp., No. 20-cv-907, 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020) ("The Policy insures property, in this case Plaintiff's property and physical places of business, and not Plaintiff's business itself.  To that end, the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiffs are simply prohibited from operating their business. The

government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.").[11]

Accordingly, I find that the Amended Complaint fails to plausibly allege coverage under the Civil Authority endorsement.

### 3.   **Virus Exclusion**

In an alternative basis for its Motion to Dismiss, Defendant argues that even assuming Plaintiff could establish a covered loss under the policies, Plaintiff's claims are expressly barred by the "Virus Exclusion."  As noted above, the Virus Exclusion states, in pertinent part:

> We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:
> . . .
> Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Am. Compl., Ex. A, pp. 21, 23.) Defendant contends that Plaintiff's alleged losses fall squarely within the exclusion as COVID-19 is a "virus" that is "capable of inducing physical distress, illness or disease."

Under Pennsylvania law, the insurer has the burden of showing that policy exclusions preclude coverage.   Miller v. Boston Ins. Co., 218 A.2d 275, 277 (Pa.

---

[11]     I note the very recent opinion by the Allegheny County Court of Common Pleas, in Ungarean, DMD v. CNA, No. GD-20-006544 (Pa. Com. Pl. Allegheny Cnty. Mar. 22, 2021), which reached a different interpretation of "direct physical loss" than in Scranton Club.  Relying heavily on dictionary definitions, the court in that matter determined that business losses incurred as a result of the COVID-19 pandemic fell within the scope of the "civil authority provisions" in the insurance contract because the closure orders "effectively prohibited meaningful access to Plaintiff's property."  Id. at 18.  Aside from the fact that the civil authority coverage provision in that case is significantly different than the one at issue here, I respectfully disagree with that court's interpretation of terms such as "direct physical loss" and "period of restoration."

1966); <u>Am. States Ins. Co. v. Maryland Cas. Co.</u>,  628 A.2d 880, 887 (Pa. Super. 1993).  Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance claims based on COVID-19 shutdowns.  These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage.  <u>See, e.g.</u>, <u>Fuel Recharge Yourself, Inc. v. Amco Ins. Co.</u>, No. 20-4477, 2021 WL 510170, at *3 (E.D. Pa. Feb. 11, 2021); <u>Frank Van's</u>, 2021 WL 289547, at *8; <u>Humans & Res., LLC</u>, 2021 WL 75775, at *8; <u>Toppers Salon</u>, 2020 WL 7024287, at *3;  <u>Wilson v. Hartford Cas. Co.</u>, No. 20-cv-3384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020); <u>see also</u> <u>Causeway Auto., LLC v. Zurich Am. Ins. Co.</u>, No. 20-cv-8393,2021 WL 486917, at *6 (D.N.J. Feb. 10, 2021); <u>N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.</u>, No. 20-cv-05289, 2020 WL 6501722, at *5 (D.N.J. Nov. 5, 2020); <u>Edison Kennedy, LLC v. Scottsdale Ins. Co.</u>, No. 20-cv-1416, 2021 WL 22314, at *8 (M.D. Fl. Jan. 4, 2021).

I decline to weigh in on the impact of this exclusion given the plethora of jurisprudence that has opined on it to date.  Having already found that Plaintiff has not plausibly pled coverage under the Policy, I will dismiss its claims without independently addressing the applicability of the Virus Exclusion here.[12]

**IV.    CONCLUSION**

I recognize the horrific economic impact the COVID-19 pandemic has had on small businesses in this country.  Certainly, no one could have reasonably foreseen this pandemic let alone confirmed that they had insurance coverage for such an occurrence.  Nonetheless, the fact remains that the Policy here, as written, does not provide coverage for the loss of business income

---

[12]    As I do not address the application of the Virus Exclusion, I will not opine on Plaintiff's invocation of the regulatory estoppel doctrine to avoid application of that Exclusion.

Plaintiff has suffered.  Accordingly, I will grant the Motion for Judgment on the Pleadings and dismiss the Amended Complaint in its entirety.